## Case No. 4,990.

FOURTEEN HORSES, ETC.

[10 Ben. 358.] [1]

District Court, S. D. New York.   March, 1879.

Edward L. Owen, for libellant.
Edward D. McCarthy, for claimant.

CHOATE, District Judge.   This is a libel against the cargo of the schooner John N. Colby for freight, etc., alleged to be due under a charter party. The charter party was made in New York, on the 27th of October, 1876, between the libellant as master and

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

agent of the owners and one Murray. By its terms the libellant agreed on the freighting and chartering of the vessel to Murray, for a voyage from New York to such safe ports and places as charterer may direct, including the West Indies and South America and back to New York, for a term of at least three months, with privilege to keep the vessel three months longer, the owner to furnish crew and provisions, the whole of the vessel, except the captain's and mates' room and necessary accommodations for the crew and for the tackles, sails and provisions of the vessel to be at the sole use of the charterer, the owner to take on board during the voyage "all such lawful goods and merchandise as the charterer or his agent may think proper to ship," the charterer to pay to the owner or his agent "freight at the rate of $690 per month and pro rata for parts of a month earned and due at the termination of each month, payable $500 to Evans, Ball & Co. upon the presentation of order of charterer, and $190 to the captain," "the charterer to pay all port charges, both foreign and domestic, including loading, discharging, consul fees, etc." The charter contained the following clauses: "It is understood that the vessel is chartered for the purpose of transporting a circus company and their necessary tents, clothing, horses, etc." "It is hereby understood that the monthly payments under this charter are to commence November 6th, 1876." "To the true performance of the foregoing agreements the said parties do hereby bind themselves, their heirs, executors, administrators and assigns, and also the said vessel, her freight and appurtenances and the merchandise laden on board, each to the other in the penal sum of the estimated amount of charter."

Under this charter, the vessel took on board at New York, on the 6th of November, the circus company, its horses, tents, and other equipments, and proceeded under the direction of the charterer to various ports in the West Indies, and arrived at New York on her return on the 3d of April, 1877. During this time the vessel was at sea, going from port to port, seventy days; the rest of the time was spent in various ports where the circus was landed and gave public performances.

This libel is brought by the owner of the vessel, claiming a balance of freight money and port charges paid. The libel was filed April 3d, 1877, while the vessel was lying at Flushing, L. I., and before she was towed to her pier in New York, and before any of the cargo was discharged. The property seized by the marshal was also seized on board the vessel and before it was discharged. The libel avers that the libellant has always, since the making of said charter party, well and truly performed all the covenants and undertakings thereof on his part, but that the charterer has not kept his covenants and undertakings;

that the vessel was employed under the charter about five months and that there became due at the end of each month $690, or for the five months $3,450; that there has been paid $1,450, leaving a balance of $2,000 or thereabouts over and above all offsets and credits; that the charterer had failed to pay all the port charges and to furnish water and provisions and libellant had paid out $117 therefor, no part of which had been repaid; that payment of these sums had been demanded and refused.

Process having issued, under which part of the circus property on board was attached by the marshal, the charterer appeared as claimant and bonded the same. He filed exceptions and answer. Upon the hearing, the claimant waived the defences set up in his answer, relying only on his exceptions, which were as follows: (1) That the libellant cannot proceed in rem against the property herein attached, the same not being cargo on which freight had been earned nor merchandise subject to a lien for freight money; and that the contract between the parties was not a contract of affreightment, nor was the adventure a commercial adventure; and (2) that the libellant had not completed his contract at the time the libel was filed and the process of attachment was issued; that the charter party had not been fulfilled; that the vessel had not reached the port of New York, and that the property attached was still on board the vessel, not having been discharged; that no cause of action had arisen under this contract at the time the libel was filed and process issued.

As to the first exception, the point taken is that from the peculiar character of the goods laden on board and the use they were to be put at the several ports to be visited, they could not be regarded as cargo to which a maritime lien would attach, nor could the adventure be considered a commercial adventure; that a maritime lien is a creation of the maritime law solely in the interests of commerce. The distinction here attempted to be drawn is certainly novel, and no authority is produced in its support. If the use to which merchandise carried on the water was to be put at the end of the voyage were the test of its being "cargo" to which the general principles of maritime law apply, as well for its protection as for its responsibility, this distinction would have been made long ago, for hardly any general ship sails from port without some articles of merchandise not designed for sale, but for the use or pleasure of the owner and shipper. The true rule appears to have been well understood by both parties to this charter, who expressly pledged the vessel to the cargo and the cargo to the vessel. It is, that all property, of whatever kind, carried by sea, whatever may be the use to which it is to be put when landed, is "cargo," and the carrying of it on ship-board is itself a commercial adventure, which clothes it with the

privileges and subjects it to the liabilities which belong to cargo by the maritime law.

As to the second exception, it is doubtless well settled as a general rule that freight under a charter party or bill of lading is not due till the cargo has been discharged; that till the cargo is discharged the voyage is not completed nor the contract of the ship fully performed. Cargo of Salt [Case No. 2,406]. But it is equally clear that by the terms of the charter party, freight may become due before the discharge of the cargo, and during the running of the charter, as in this case, at the end of every month. McGilvery v. Capen, 7 Gray, 525; Raymond v. Tyson, 17 How. [58 U. S.] 53. And while the agreement to pay freight by instalments at fixed intervals may, under some circumstances, show an intention to waive the ordinary maritime lien on the cargo therefor, as in the case last cited, yet where the charter, by which the agreement for payment in instalments is made, expressly pledges the vessel and cargo to each other for the performance of the charter party, the maritime lien for the freight cannot be held to be waived, even though the instalments are payable at a place other than that at which the vessel will probably be when the time of payment arrives. In this case, therefore, the failure of the charterer to pay the monthly instalments due prior to the filing of the libel was a breach of the charter party, for which an action would then lie, and the owner of the vessel had a lien on the cargo for his security. The libel was not prematurely filed and the process was properly issued. The libellant was not bound to wait till he had discharged his cargo. He had the right to treat the contract as broken and to sue thereon. It is suggested by claimant's counsel that if the libellant could thus libel the cargo on board at Flushing or in New York before its discharge, he could have done so at Key West or a port in the West Indies, and so have broken up the voyage or indefinitely detained the vessel. I see no reason why the owner of the vessel could not do so, if the freight already due had not been paid. Such failure to pay was a breach of the contract, and the owner of the vessel would thereby be absolved from any obligation to continue the performance of the contract on his part, if he saw fit to insist on the failure to pay as a breach of the contract. Such a detention or interruption of the voyage for the enforcement of an accrued right expressly secured to the owner of the vessel by the terms of the charter, could not be charged against the owner of the vessel as a breach of the contract. It would be caused wholly by the fault of the charterer in violating the contract on his part.

It is claimed by the counsel for the charterer that the owner of the vessel waived payment of the monthly instalments, but I think this point is neither sustained by the evidence nor is it set up in the exceptions, nor indeed in the other defences of the answer which have been abandoned.

Decree for the libellant with costs and reference to compute amount due.